# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **CRIMINAL NO. 09cr051(ESH)** |
| v. | : | **Sentencing Hearing: July 16, 2009** |
| | : | |
| DAVID MALAKOFF, | : | |
| Defendant. | : | |

## UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits its Memorandum in Aid of Sentencing. In support thereof, the United States respectfully states the following:

### Background

1.     On March 16, 2009, defendant David Malakoff pled guilty to count one of the information (Possession of Child Pornography), in violation of Title 18 of the United States Code, Section 2252A(a)(5)(B).

2.     The defendant, David Malakoff, was an employee of National Public Radio (NPR) which is located at 900 7th Street, N.W., Washington, D.C. As an employee of NPR, the defendant had been issued a company laptop computer.

3.     On June 3, 2008, the defendant contacted NPR's Information Technology (IT) department to report that he was having problems with his computer. The defendant reported that he believed that a virus may have been affecting the computer. A member of the IT staff inspected the computer and found that Limewire, a peer to peer file sharing program which allows users to

share files with each other over the internet, had been downloaded on to the defendant's computer. Upon further inspection the employee found a Limewire folder that contained files with sexually explicit titles referencing sexual acts with minors. The employee then contacted the Director of IT Operations, the Director, to report his findings.

4.      The Director also reviewed the file names which he described to authorities as "obvious" references to child pornography. Based on his review of the filenames, the Director contacted NPR's legal department to discuss the matter. Counsel for the defendant notified law enforcement of NPR's finding and an investigation was conducted.

5.      A forensic examination of defendant's computer was conducted by the company Stroz Frideberg. The FBI and the Government reached an agreement with counsel for NPR to establish protocols that were consistent with FBI protocols for conducting the examination. This agreement was reached in order to protect confidential NPR data that was located on the defendant's computer. The examination revealed that images were downloaded by the defendant on April 6, 2008. The computer was in the defendant's possession at the time the images were downloaded. The images were located in: DocumentsandSettings\dmalakoff\MyDocuments\limwire\incomplete. There were at least 600 images of child pornography found on the defendant's computer.

6.      The images contained depictions of prepubescent children engaging in fellatio, vaginal intercourse and masturbation, as well as images of sexual acts of violence against children.

7.      The defendant knowingly possessed materials depicting child pornography that had been shipped or transported in interstate commerce or foreign commerce by means of a computer.

**Statutory Penalties**

8.      Pursuant to Title 18 of the United States Code, Sections 2252A(a)(5)(B) and 3571(b)(3), the felony offense of possession of child pornography carries a potential maximum statutory penalty of 10 years of imprisonment and a maximum fine of $250,000. Pursuant to Title 18 of the United States Code, Section 3583(k), a term of supervised release for not less than five years and potentially for as much as life is applicable.

**Sentencing Guidelines**

9.      The Federal Sentencing Guidelines calculation set forth in the Presentence Report (PSR) places the defendant's base offense level at 18.  See PSR ¶17.  The PSR accounts for a two-point increase for identified images of children under the age of 12.  See PSR ¶18.  The PSR accounts for a four-point increase for material that portrays sadistic, or masochistic conduct or other depictions of violence. See PSR ¶19.  The PSR accounts for a two-point increase for the use of a computer or interactive computer service for the possession, transmission, receipt or distribution of the materials. See PSR ¶20.  The PSR accounts for a five-point increase for the defendant possessing 600 or more images.  See PSR ¶21.   The PSR also correctly affords the defendant a three-point reduction in his guidelines calculation for acceptance of responsibility, which makes his total offense level 28.  See PSR  ¶ 28.   The base criminal history score is a 0, which establishes a criminal history category of  I.   See PSR ¶ 31.  The statutory provision for count one is a term of imprisonment of not more than 10 years.   The Guideline range for the defendant is 78 to 97 months of imprisonment. See PSR ¶ 63.

**Sentencing Recommendation**

10.      The government recommends to the Court that the defendant be sentenced to the low

end of the applicable guideline range.  The government also recommends a  fine of $5,000.  The government recommends that the Court impose special conditions of supervised release:

a) The defendant is required to register as a sex offender for twenty-five years pursuant to the Sex Offender Registration and Notification Act, 18 U.S.C §2250, 42 USC §§ 16911(3)(A)(ii), 16915(a)(2 ) and he is also subject to the registration authority where the defendant will live, work or attend school.

b)  The defendant shall not possess or use a computer that has access to any on-line computer service at any location, including his place of employment, without the prior written approval of the probation office.  "On-line computer service" includes, but is not limited to, any internet provider, bulletin board system, or other public or private computer network;

c)   The defendant shall submit to periodic unannounced examinations of the defendant's computer by the probation office;

d)  The defendant shall not possess or use any data encryption program or technique and he shall refrain from accessing via computer, any pornographic images;

e)  The defendant shall maintain a daily log of all addresses accessed by way of any computer, other than those authorized for employment, and shall make the log available to the probation office for review;

f)  The defendant shall consent to third party disclosure regarding computer related restrictions to any employer or potential employer;

g)  The defendant shall not engage in employment, consulting, or associate in any way with children as a profession for the duration of his supervision;

h)  The defendant shall not participate in any volunteer activity that involves contact

4

with minors;

        i)  The defendant shall participate in mental health treatment specifically related to sexual offender therapy;

        j)  The defendant shall not associate with any known sex offender;

        k) The defendant shall comply with the Sex Offender Registration requirements for convicted sex offenders for a minimum term of years to be determined by the proper authority in any state or jurisdiction where he resides, is employed, carries on a vocation or is a student.

        11.     When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a).  See Gall v. United States, 128 S. Ct. 586 (2007).  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. §3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

        12.     The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in §3553(a).  Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by § 3553(a)(1).  The Guidelines themselves thus seek to implement – in a fair and uniform way – the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in Gall.  See Gall, at 590.

13.    The government submits that the advisory Guideline calculations set forth in the PSR are accurate and provide for a sentence that reflects the §3553(a) factors.

14.    Turning specifically to the § 3553 factors, the defendant's conduct in viewing images of child pornography perpetuated the victimization of the children depicted in those images.[1] Recognizing the growing epidemic of child pornography and the deeply damaging and enduring effects of abuse on the victims of child pornography, Congress has chosen to impose severe penalties for such offenses.  In doing so, Congress has found that "[t]he illegal production, transportation, distribution, receipt, advertising and possession of child pornography ... is harmful to the physiological, emotional, and mental health of the children depicted in child pornography and has a substantial and detrimental effect on society as a whole."  Adam Walsh Child Protection and Safety Act of 2006, H.R. 4472, 109th Congress, 2nd Sess. §501(1)(A) (2006).  Moreover, Congress recognized that "[e]very instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse."  *Id.* at §501(2)(D).  *See also*, Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003, H.R. Conf. Rep. No. 66, 108th Congress, 1st Sess. §501 (2) (2003) (hereinafter the "PROTECT Act") ("'The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance,' New York v. Ferber, 458 U.S. 747, 757 (1982), and this interest extends to stamping out the vice of child pornography at all levels in the distribution chain.  Osborne v. Ohio, 495 U.S. 103, 110 (1990).").

---

[1]    To more fully appreciate the crimes to which the victims were subjected, the government urges the Court to review prior to sentencing a computer disk, or photographs, of the images that defendant downloaded onto his computer, which images the government will provide at the Court's convenience.  The images previously have been reviewed by defense counsel.

15.     To effectuate Congress's clear intent in enacting these child pornography laws,

defendant's punishment should take into account the traumatic impact of his actions on its victims,

the children throughout the world who are forced or tricked into the degradation that is child

pornography for the mere gratification of adults like this defendant.  Victims of child pornography

suffer in many ways:

> First, a child who is sexually abused is shaped in a
> developmentally inappropriate and interpersonally dysfunctional way,
> emerging with (1) inappropriate repertoires of sexual behavior, (2)
> confusions and misconceptions about his or her sexual identity and
> the role of sex in affectionate relationships, and (3) unusual emotional
> associations with sexual activities.
>
> Second, a child who is sexually abused by someone on whom
> he or she was vitally dependent experiences betrayal by (1) the
> perpetrator and (2) family members who are not sexually abusing the
> child but are unable or even unwilling to believe the child, thereby
> ignoring the child's cry for help.  Moreover, child-victims who
> experience betrayal suffer from an intense need to regain trust and
> security, manifested in extreme dependency and clinging.  As adults,
> they suffer from impaired judgment about the trustworthiness of other
> people or even experience hostility and anger towards personal
> relationships.  Furthermore, anger stemming from betrayal may lead
> to aggressive, hostile or delinquent behavior as a way of protecting
> the self from future harm or as a way of retaliating against the initial
> abuse.
>
> Third, powerlessness occurs in sexual abuse when a child's
> territory and body space are repeatedly invaded against the child's
> will.  Force and threat are not necessary for a child to feel powerless
> – the mere realization that he or she is trapped, combined with the
> fear of the consequences of disclosing his or her participation in
> sexual activity, can create a sense of powerlessness.  Nightmares,
> phobias, hypervigilance, clinging behavior, and somatic complaints
> related to anxiety have been repeatedly documented among sexually
> abused children.  As adults, the effects of powerlessness can include
> the impairment of a person's sense of efficacy and coping skills. . . .
>
> Fourth, stigmatization occurs when sexually abused children

incorporate negative connotations related to their sexual experiences. Child-victims may feel isolated and may gravitate to various stigmatized levels of society, thereby becoming involved in drug or alcohol abuse, criminal activity, prostitution, extreme forms of self-destructive behavior, and suicide attempts.

Lydia W. Lee, Note, Child Pornography Prevention Act of 1996: Confronting the Challenges of Virtual Reality, 8 Southern California Interdisciplinary Law Journal 639, 662-64 (1999) (quotation marks and footnotes omitted) (summarizing findings set forth in David Finkelhor & Angela Browne, The Traumatic Impact of Child Sexual Abuse: A Conceptualization, 55 American Journal of Orthopsychiatry 530, 531-36 (1985)).

16. Moreover, because the Internet has become the distribution medium of the photographs, the degradation of these children is permanent, continuous, and impossible to eradicate. It is the ultimate humiliation that all of the victims, whether rescued and identified or not, are left with a terrible burden to carry for the rest of their lives: the knowledge that not only were they victimized by the predators who used them to create pornographic images, but that these images remain in circulation, and are viewed again and again and again by those who derive pleasure from seeing the images. "Child pornography invariably produces great shame and guilt in the children involved, especially as they get older and more fully comprehend the enormity of their abuse and know that there is a permanent record of the degradation out there, circulating around for people to see – maybe future friends or their own children when they grow up." Dr. Victor B. Cline, Pornography's Effects on Adults & Children, http://obscenitycrimes.org/clineart.cfm, (2001). As the Fifth Circuit succinctly has stated, "[u]nfortunately, the 'victimization' of the children involved does not end when the camera is put away." United States v. Norris, 159 F.3d 926, 929 (5th Cir. 1998), cert. denied, 526 U.S. 1010 (1999).

8

17.     The government submits that a sentence at the low end of the applicable guideline range provides for a sentence that reflects the 3553(a) factors.

18.     The recommendation adequately reflects the seriousness of the offense while providing just punishment.  The defendant viewed and downloaded very sexually explicit images of children engaged in degrading and humiliating acts.  The video links that he viewed and downloaded were done so intentionally.  The titles of the videos were descriptive and described sexual conduct with children.  While there is only evidence of what appears to be isolated conduct by the defendant, his behavior helped to perpetuate the continued abuse of the children depicted in the photos and videos.

19.   In the instant case, one of the children whose images the defendant possessed and its parents,  have submitted victim impact statements for use in cases in which images of the child is involved.  The statements describe, in heart-breaking detail, how the children and their parents continue to suffer knowing that pictures are being circulated by people like the defendant, and also viewed to gratify the sexual interest of pornography collectors.  The victim and her family have requested that their victim impact statement be read aloud in court at the time of sentencing.  The Government leaves that decision to the sound discretion of the Court.

20.     In addition to the seriousness of the offense, the government also considered other factors in making its sentencing recommendation. The defendant has no prior criminal history.  The defendant immediately accepted responsibility for his conduct and was willing to enter into a plea agreement prior to the case being indicted.  Additionally, the sentence affords adequate deterrence to criminal conduct by the defendant and others in the community.  Sentencing the defendant to the low end of the applicable guideline range would serve the interests of the community, and be

consistent with the goals set forth in 18 U.S.C. § 3553.

## **CONCLUSION**

WHEREFORE, based upon the above, and the information reflected in the Presentence Report, the United States respectfully requests that the defendant be sentenced in accordance with the government's recommendation.

Respectfully,

_____
CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY

By: _____/s/_____

BRIDGETTE CRAFTON
ASSISTANT UNITED STATES ATTORNEY
NJ Bar #  081051996
United States Attorney's Office
555 Fourth Street, N.W., Room 10-840
Washington, D.C. 20530
Phone: (202) 616-9370
Bridgette.Crafton@usdoj.gov